[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is the second action brought by plaintiff Marcus Development Group to recover damages against defendant St. Vincent Depaul Society of Meriden (hereafter St. Vincent) resultant from the breach of a written lease which the parties executed on April 2, 1990. Under the terms of the lease defendant St. Vincent rented from plaintiff Marcus Development Group a portion of certain premises known as and located at 85-89 West Main Street in Meriden, Connecticut, for a term of five (5) years, commencing April 1, 1990, and terminating on February 28, 1995. The base monthly rent varied by year. During the first year the base monthly rent was $1,250.00; during the last year it was $1,519.44,
On October 26, 1992, the plaintiff filed the CT Page 5053 first action against the defendant. In the first action the plaintiff claimed that the defendant had not paid rent since August of 1992 and then owed $4,134.39 in rental payments under the lease. In a second count of that action the plaintiff claimed the same $4,134.39 as unpaid use and occupancy. The plaintiff's prayer for relief sought damages, attorney's fees and costs. This first action was settled by a Stipulated Agreement of the Parties, signed by them on February 26, 1993. The stipulated agreement, approved by the Court, states the following in material part:
 Judgment shall enter in favor of the plaintiff in the amount of $10,000 inclusive of costs and fees through February 28, 1993.
 The defendant agrees to notify plaintiff . . . of the date it intends to vacate.
On March 31, 1994, plaintiff Marcus Development Group filed the instant (second) civil action against defendant St. Vincent in a one-count complaint. In the complaint the plaintiff alleges that the parties entered into a lease -the same one as alleged in the first action — and that the defendant breached the lease by failing to pay the rent due for the month of March 1993, and for subsequent months.
The complaint further asserts that the defendant breached the lease by failing to make certain other payments required by the lease; namely, utility costs and additional rental payments. In addition, the complaint contains the allegation that the defendant vacated the premises on or about March 5, 1993, and has no intention of resuming occupancy. The plaintiff claims that it has been damaged. In its prayer for relief the plaintiff claims money damages, as well as attorney's fees and interest.
In its Answer defendant St. Vincent denies that it breached the lease by failing to pay rent, utility and additional charges after March 1, 1993. In its Answer the defendant also presented the following as Special Defenses: 1) by notice to quit dated November 19, 1990 CT Page 5054 the plaintiff terminated the tenancy; 2) the plaintiff has waived its right to bring this action; 3) the doctrine of res judicata bars the bringing of this action; and 4) the doctrine of collateral estoppel prohibits the bringing of this action.
During the trial of this action the plaintiff introduced the parties' written lease into evidence. Mr. Calvin Hurt, the General Partner of the plaintiff, testified that although a Notice to Quit, dated November 19, 1990, was served upon the defendant, the purpose of the notice was to collect back rent. Mr. Hurt stated that the payments specified in the parties' written Stipulated Agreement, signed on February 26, 1993, to settle the first action, have been made. However, Mr. Hurt testified that the settlement of the first action by the express terms of the Stipulated Agreement was limited to the period "through February 28, 1993;"
whereas in this second action the plaintiff is seeking to collect damages to cover the balance of the payments which it would have received for the remaining period under the lease (i.e. March 1, 1993 through February of 1995), as well as to recover its costs, including counsel fees, incurred in bringing this action.
The parties stipulated that defendant St. Vincent vacated the premises by March 5, 1995. Mr. Calvin Hurt testified that the amount of damages sustained by the plaintiff for lost monies or unpaid use and occupancy under the lease contract for the period of March 1, 1993 through February 1995 is $35,463.93, exclusive of costs of collection. Another witness for the plaintiff also testified that although the plaintiff marketed the premises aggressively in order to obtain a new tenant or to sell the premises, the plaintiff was unable to do so.
After the plaintiff rested its case, Mr. Theodore Ogle, President of St. Vincent, took the stand. Mr. Ogle testified that St. Vincent rented the subject premises from which to operate a thrift store the funds from which would be used to support its various charitable services to the public. Mr. ogle [Ogle] stated that when he authorized the February 26, 1993 signing of the Stipulated Judgment which terminated the first collection action he thought that that judgment "cleaned CT Page 5055 the state" between the parties and settled the entire matter.
The Court shall now review the applicable law and apply it to the facts of this case. The law clearly provides the lessor of commercial property two options when a tenant breaches a lease. The landlord may refuse to accept the surrender of the premises and sue to recover the full amount of rent due under the lease, without mitigation of damages; or the landlord may elect to terminate the tenancy and sue for damages in an action for breach of contract, with mitigation of damages an issue in the latter case. Rokalor, Inc. v. ConnecticutEating Enterprises, Inc. 18 Conn. App, 384, 388 (1989).
Certainly, the service of the notice to quit by plaintiff Marcus Development Group terminated the defendant's tenancy. However, the lease contract ". . . survives for the purpose or measuring the claims arising out of the breach . . ." Rokalor Inc., Id. at 384, citing Batter Building Materials Co. v. Kirschner.
The Court finds the discussion of consent decrees by the Supreme Court in Gagne v. Norton, 189 Conn. 29 (1983) to be not only applicable but controlling in the disposition of this case.
 A consent decree, although enforceable like any other judicial decree, is not a judicial determination of any litigated right. Bryan v. Reynolds, 143 Conn. 456, 460 (1956). `It may be defined as a contract of the parties acknowledged in open court. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement." Id.
 Gagne, supra, at 34.
The Supreme Court in Gagne, supra, states further that if the parties' intentions are unclear, extrinsic evidence may be used to show the true scope of the agreement. CT Page 5056
This court finds that although "[a] valid judgment or decree entered by agreement or consent operates as res judicata to the same extent as a judgment or decree rendered after answer and contest," Gagne, Id. at 31, the doctrine of res judicata is inapplicable to this second action, inasmuch as the clear and unambiguous wording of the stipulated judgment limited the first action to recovering damages through February 28, 1993.Gagne, Id. at 34. Certainly, the clear language used in the stipulation is controlling in this regard. Barnardv. Barnard, 214 Conn. 99, 110 (1978). For the foregoing reasons, neither the doctrine of res judicata not collateral estoppel apply to this second action. The court further finds that the plaintiff undertook reasonable efforts in mitigation of its damages.
Accordingly, the Court finds the issues on the complaint in the favor of the plaintiff. Damages are found to be in the amount of $35,456.93, plus interest. A hearing shall be scheduled to hear argument as to interest and to receive evidence as to the amount and reasonableness of plaintiff's claim for counsel fees.
Clarance J. Jones, Judge